**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**CLARENCE ALEXANDER FRITZ** — **CIVIL ACTION NO. 2:13-cv-31**

**SECTION P**

**VERSUS**

**JUDGE MINALDI**

**M. ALLEN, ET AL** — **MAGISTRATE JUDGE KAY**

**REPORT AND RECOMMENDATION**

Before the court is a civil rights complaint[1] filed *in forma pauperis* by *pro se* plaintiff Clarence Fritz ("Fritz"). This matter arises under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (recognizing that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action against state officials permitted by 42 USC § 1983).

At the time Fritz filed his complaint, he was housed at the Federal Detention Center in Oakdale, Louisiana ("FCIO"). Fritz has since been transferred to LaSalle Detention Center in Trout, Louisiana ("LDC"). Although Fritz pled guilty to several felony offenses from 2007 through 2010, it appears that Fritz was only being held by the United States department of Immigration and Customs Enforcement ("ICE") at the time of filing.

Fritz names the following as defendants in this matter: FCIO Lieutenants M. Allen and Childers ("Childers"); FCIO Associate Warden M. Boyle ("Boyle"); FCIO Captain Zanatu ("Zanatu"); FCIO Warden J. Baltazar ("Baltazar"); FCIO Officer C. Haymon ("Haymon"); FCIO counselor C. Frank ("Frank"); FCIO psychologists Sasha J. Lambert ("Lambert"), Dante

[1] Fritz filed an amended complaint and exhibits on April 5, 2013. Docs. 14 and 15.

D. Alexander ("Alexander"), and Barbara G. Moorehead ("Moorehead"); ICE agent Jeanie B. Fruge ("Fruge"); and FCIO Assistant Field Office Directors Brian Gueringer ("Gueringer") and Scott L. Sutterfield ("Sutterfield").

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **SERVED IN PART,**[2] **AND DISMISSED, IN PART, WITH PREJUDICE.**

## I. BACKGROUND

Fritz states that on October 22, 2012, Lieutenant Allen used excessive force against him. Specifically, he claims that Allen and Haymon escorted him from his cell in the Special Housing Unit ("SHU"), and brought him to a conference room to address his request for a typewriter. In response to Allen's question of why Fritz thought he should get a typewriter, Fritz responded that it was his right to have one in order to prepare his legal documents. Doc. 1, p. 3. At that point Allen allegedly sprang towards Fritz, punched him in the abdomen, and threatened more physical violence. Doc. 1, p. 6. Fritz claims that he was in restraints when the incident occurred. He also states that rather than intervene in the attack, Haymon held on to Fritz's left arm. Officer Haymon then escorted Fritz back to his cell.

On the following day Fritz discussed the event with FCIO counselor Frank. Doc. 1, p. 7. Fritz then submitted a grievance regarding the incident to Associate Warden Boyle. He later reported the incident to ICE agent Fruge. During her interview with Fritz, Fruge stated that she would forward Fritz's complaint to her supervisors—FCIO assistant field office directors Sutterfield and Gueringer. Doc. 14, p. 3. On the day of the Fruge interview, Fritz was also seen

[2] Via a separate Memorandum Order, the undersigned is ordering the service of Fritz's excessive force and retaliation claims against Allen.

by Dr. Lambert. Fritz complains that Dr. Lambert refused to treat him for the anxiety attacks, chest pains, and headaches that occurred when he thought about the incident.

The following week, Fritz informed the Department of Justice ("DOJ") about the incident and reported the alleged abuse to Captain Zanatu. Dr. Alexander also evaluated Fritz at this time but did not give Fritz the treatment he desired. Doc. 14, p. 5.

Fritz states that the incident made him so despondent that he attempted to kill himself on November 7, 2012. Doc. 1, p. 7. He was placed on suicide watch and was evaluated by Dr. Moorehead. Moorehead informed Fritz that she would treat him for post-traumatic stress, depression and anxiety. Doc. 14, p. 5. Fritz claims that the week after he was put on suicide watch Lieutenant Childers informed him that he was trying to have ICE transfer Fritz away. Approximately one month after the incident, Fritz was interviewed by a special investigator from the DOJ.

Fritz contends that Boyle and Zanatu failed to comply with established procedures in addressing the reported assault. In regard to FCIO Warden Baltazar, Fritz claims that Baltazar failed to keep Allen away from him. Further Fritz states that Gueringer and Sutterfield failed to render assistance to him and failed to investigate his complaints. Fritz additionally claims that Dr. Moorhead, Dr. Lambert, and Dr. Alexander failed to provide the medical assistance that he needed.

Fritz claims that, because he filed the grievance, he experienced retaliation from Allen and other members of the SHU staff. Namely, he states: (1) that his mail and personal property were withheld; (2) that he was denied access to the law library; and (3) that he was denied medical care. According to Fritz, the retaliatory harassment lasted until just before he was interviewed by the DOJ. Doc. 1, p. 9.

Fritz seeks to "compel the U.S. Federal Bureau of Prisons, the Department of Homeland Security, and Immigration Customs and Enforcement to implement the required notification documents to inform Immigration detainees and Inmates at The Oakdale-Federal detention Center how and to whom to file a 287(g) complaint of treatment while being detained by ICE." Doc. 14, p. 6. He also asks for $4,000,000.00 in compensatory damages as well as $6,000,000.00 in punitive damages, all against defendant Allen.

## II. LEGAL STANDARDS

### A. Screening of Claims

Fritz has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. Under 28 U.S.C. §1915(e)(2)(B), a district court is directed to dismiss an action if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must accept the plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley*, 157 F.3d at 1025 (failure to state a claim).

**B. Bivens Action/ 42 U.S.C. § 1983**

As noted, Fritz has filed a *Bivens* action. According to the Fifth Circuit, a *Bivens* action is analogous to a statutory action brought under 28 U.S.C. § 1983, and thus the analysis of a *Bivens* action is the same as a 1983 action. *Izen v. Catalina*, 398 F.3d 363, 367 n. 3 (5th Cir. 2005). Section 1983 and *Bivens* proscribe conduct by any person who, under the color of law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. Thus, an initial inquiry in a *Bivens* lawsuit is whether the plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable *Bivens* claim. *See Hessbrook v. Lennon*, 777 F.2d. 999, 1005 (5th Cir. 1985).

**III. ANALYSIS**

Fritz's complaints advance claims against numerous defendants for various types of alleged wrongs. Each set of Fritz's claims will be addressed below according to the applicable standards of law.

**A. Fritz's Allegations against Counselor Frank and Lieutenant Childers**

A plaintiff in a civil rights case cannot rely on conclusory allegations to support his claims. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Fritz's statements as to these defendants are conclusory and do not demonstrate that a constitutional deprivation occurred. Fritz states that on October 23, 2012, he discussed the event with defendant Frank. Thereafter, he claims that on November 13, 2012, defendant Childers informed him that he was trying to have ICE transfer Fritz away. Fritz has not stated a constitutionally recognized basis for any claim against defendants Frank and Childers, and his claims against these defendants should therefore be dismissed.

**B. Supervisor Liability (Warden Baltazar; Associate Warden Boyle; Captain Zanatu; FCIO Assistant Field Office Directors Gueringer and Sutterfield; and ICE Agent Fruge)**

Fritz's claims against the above defendants arise in their capacity as supervisory officials. It is well settled that supervisory officials may not be held liable under section 1983 under the doctrine of *respondeat superior*. *See Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir. 1992). To be liable under section 1983, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation. *Id.*

The statements in Fritz's complaints as to any breach of supervisory responsibilities attributed to the named defendants do not allege any personal involvement in the excessive-force incident, nor do the allegations discuss a deficient policy implemented by these defendants. Fritz's supervisor-liability claims should therefore be dismissed.

**C. Inadequate Medical Care (Dr. Lambert, Dr. Alexander, and Dr. Moorehead)**

Medical care claims asserted by immigration detainees are properly considered under the due process clause of the Fourteenth Amendment. The jurisprudence recognizes "no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

When faced with a detainee's claim that his constitutional rights were violated by the question is whether the state official acted with *deliberate indifference* to the inmate's constitutional rights . . . ." *Id*. (emphasis added). The deliberate-indifference standard, in the context of the failure to provide reasonable medical care, requires that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d 447,

458-59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997).

The fact that a plaintiff disagrees with the propriety of proposed medical care or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit stated that in balancing the needs of the prisoner versus the needs of the penal institution, the test is one of medical necessity, not of desirability.

The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the section 1983. Prisoners are not constitutionally entitled to the best medical care that money can buy. *Woodall*, 648 F.2d at 268. Merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v. Lynaugh*, 920 F.2d 320, 321(5th Cir. 1992). Furthermore, the fact that a plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992).

In the instant case, the information contained in Fritz's complaints show that he did receive medical treatment, including psychological evaluations by Dr. Lambert, Dr. Alexander,

and Dr. Moorehead. Fritz's allegations, at most, state a disagreement amongst him and the medical staff regarding the procedures to treat his medical problems. Fifth Circuit precedent has firmly established that claims such as those made by Fritz are insufficient to establish that a constitutional violation has occurred. *See, e.g.*, *Woodall*, 648 F.2d at 268; *Norton*, 122 F.3d at 29. Furthermore, absent a constitutional violation, federal courts are generally reluctant to interfere in the internal affairs of a prison. *See, e.g. Shaw v. Murphy*, 522 U.S. 223, 228–30 (2001); *Procunier v. Martinez*, 416 U.S. 396, 404–05 (1974).

The decision regarding Fritz's medical treatment is best left to the prison officials, and not with this Court. The facts of this matter clearly do not demonstrate that the defendants refused to treat Fritz, ignored his complaints, intentionally treated him incorrectly, or disregarded his medical needs. The evidence before the court simply does not support a finding of deliberate indifference. Accordingly, this Court finds that Fritz's inadequate-medical-care claims should be dismissed.

**D. Failure to Protect (Officer Haymon)**

Fritz claims that Officer Haymon, who was allegedly holding Fritz's left arm at the time of the complained-of incident, failed to stop the attack or admonish Lieutenant Allen for his actions. In other words, Fritz claims that Haymon failed to protect him from Allen's alleged use of excess force.

To prove a violation of constitutional rights in connection with an episodic act or omission case—such as the claim presented here—a detainee must establish that the defendant acted with subjective deliberate indifference. *See Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir. 1996) (en banc). This requires that the plaintiff establish that the defendant was actually

aware of a substantial risk of serious harm to an inmate's health or safety, yet consciously disregarded the risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Nothing in Fritz's complaint in any way indicates that Haymon knew of an excessive risk to Fritz's health or safety posed by Allen or that he disregarded the risk. There are no allegations which would suggest that Haymon knew that Lieutenant Allen intended to strike as plaintiff claims Allen did. Thus, Fritz's failure-to-protect claim against Haymon fails to state a claim upon which relief may be granted, and should therefore be dismissed.

**E. Injunctive-Relief Demand**

Since the filing of this complaint, Fritz has been transferred from FCIO. Therefore, his requests for injunctive relief are moot.

The law is clear that the transfer of a prisoner out of an allegedly offending institution generally renders his claims for injunctive relief moot. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam) (holding that plaintiff's individual suit challenging parole procedures was mooted by release absent a "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Herman v. Holiday*, 238 F.3d 660 (5th Cir.2001) (holding that even if plaintiff had established an Eighth Amendment violation, his transfer from the offending institution rendered his claims for declaratory and injunctive relief moot) (citing *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (per curiam) (holding that prisoner transferred out of offending institution could not state a claim for injunctive relief)). As Fritz does not attempt to establish a "demonstrated probability" that he will again be subject to FCIO jurisdiction, his claims for injunctive relief have been mooted by his transfer from FCIO. *Weinstein*, 423 U.S. at 149

**F. Excessive Use of Force and Retaliation (Lieutenant Allen)**

Fritz's claims of excessive use of force and retaliation as to Lieutenant Allen survive review and should be served upon defendant Allen.

## IV. CONCLUSION

For reasons stated,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED, IN PART, WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

A separate Memorandum Order is issued this date addressing Fritz's claim that survives initial review.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers this 3rd day of September, 2013.

KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE